UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN FLORES, | No. C 10-4238 CRB (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MIKE McDONALD, | |
| Respondent. | |

**INTRODUCTION**

This is a federal habeas corpus action filed by a pro se state prisoner pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the petition is DENIED.

**BACKGROUND**

On the night of May 14, 2006, petitioner, a member of the West Side Fontana Diablos gang, shot and killed Jose Carillo outside a 7-Eleven store in Salinas. Carillo had driven to the store late that night with his cousins Ricardo and Shantel, and Shantel's friend Anthony. Petitioner, riding with

his friends "Happy" and Granado in a Jeep, drove into the 7-Eleven parking lot at the same time. Anthony and Ricardo went inside the store to make purchases, while Carillo and Shantel stayed in the car. Petitioner, Happy and Granado entered the store. Carillo also entered the store.

According to the prosecution, once inside the 7-Eleven, petitioner and his friends stared at Carillo, Anthony and Ricardo. Petitioner, who had a gang tattoo on the back of his head, repeatedly asked them where they were from. Carillo finally responded, "North Side." Petitioner threw a punch at Carillo and a short fight between Carillo and two of the men from the Jeep ensued. One of petitioner's friends threw a wet-floor cone at Carillo. The store clerk activated the store's silent alarm. According to the defense however, a different series of events preceded the altercation. The defense purported that Carrillo "mad-dogged" (i.e. glared at) petitioner without cause, confronted Happy and called petitioner a "bitch."

Anthony heard petitioner say, "let's take this outside." The men exited the store. When Ricardo saw a gun in petitioner's hand, he ran back into the store. He heard shots. Carrillo stumbled back into the store and fell to the floor. Shantel ran inside and tried to put pressure on Carrillo's wounds. Police and medical personnel arrived but were unable to save Carrillo. Petitioner was arrested a few days later. At trial, petitioner testified that he shot Carrillo in self-defense because Carillo's appearance and behavior made him appear armed and dangerous.

On June 16, 2008, a jury found petitioner guilty of second degree murder and unlawful possession of a firearm. The jury also found that petitioner personally used a firearm in the commission of a robbery, and that both offenses were committed for the benefit of or in association with a street gang.

In a separate case brought against petitioner, petitioner pled guilty to the possession of methamphetamine for sale, on condition that he receive a sentence to be served concurrently with the sentence for his murder conviction. The trial court sentenced petitioner in the two cases to 46 years to life in prison and imposed restitution fines of $10,000 and $400.

Petitioner's conviction was affirmed by the California Court of Appeal. The Supreme Court of California denied his petition for review. In his federal habeas petition, petitioner raises the same

claims he raised on direct appeal.

## DISCUSSION

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). If the state court did not reach the merits of a claim, federal review of the claim is de novo. *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003).

A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 796 (2001).

A.  **Claim I**

Petitioner alleges that trial counsel was ineffective for failing to request CALJIC No. 2.71 to caution the jury regarding Anthony's testimony recalling petitioner's statement "let's take this outside." Petitioner alleges that this statement was essential to the prosecution's case since it contradicted petitioner's defense theory that he shot Carrillo in self-defense. CALJIC No. 2.71 provided:

> An admission is a statement by [a] [the] defendant which does not itself acknowledge [his] [her] guilt of the crime[s] for which the defendant is on trial, but which statement tends to prove [his] [her] guilt when considered with the rest of the evidence. [¶] You are the exclusive judges of as to whether the defendant made an admission, and if so,

whether that statement is true in whole or in part. [¶] [Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution.

*People v. Flores*, No. H033212, 2009 WL 4760801 at *8 (Dec. 14, 2009). Petitioner argues that because Anthony's testimony was central to the government's case, failure to request CALJIC No. 2.71 was prejudicial.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Overall, "the standard for judging counsel's representation is a most deferential one." *Richter*, 131 S. Ct. at 788.

On appeal, the state court denied petitioner's claim, finding that petitioner failed to demonstrate prejudice. The court stated:

> In this case, even if the trial court erred by failing to give sua sponte, and counsel rendered deficient performance by failing to request, CALJIC No. 2.71 or a similar instruction, we find no reversible error. This is not a case in which the parties presented conflicting evidence as to the precise words allegedly spoken by defendant, their meaning or context, or whether they were accurately remembered or reported. Only one witness, Anthony, testified as to the statement allegedly made by defendant, and the court gave various instructions pertaining to witness credibility, so the jury was provided guidance on how to determine whether or not to credit Anthony's testimony concerning defendant's alleged statement. FN9 The store surveillance videos of the entire incident were shown to the jury and defendant did not dispute that he checked his gun before he exited the store or that he shot Carrillo within seconds of when

> Carrillo followed him outside the store even though he never saw Carrillo with a weapon. Therefore, based on a careful review of the record, we conclude that defendant was not prejudiced by the failure of the trial court to give CALJIC No. 2.71 or a similar instruction. It does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error (*see People v. Carpenter*, supra, 15 Cal.4th at pp. 392-393, 63 Cal.Rptr.2d 1, 935 P.2d 708; *People v. Beagle*, supra, 6 Cal.3d at pp. 455-456, 99 Cal.Rptr. 313, 492 P.2d 1), and there is not a reasonable probability that, but for counsel's failure to request the instruction, the result of the proceeding would have been different (*Strickland v. Washington*, supra, 466 U.S. at p. 694).
>
> FN9. The jury was instructed with CALCRIM No. 105 on the factors to consider in evaluating the credibility and believability of witnesses, with CALCRIM No. 301 on the sufficiency of testimony of one witness and the need to carefully review all the evidence, with CALCRIM No. 302 on evaluating conflicting evidence, and with CALCRIM No. 318 on how to use evidence of a statement that a witness made before the trial.

*Flores*, 2009 WL 4760801 at *9.

The state court reasonably denied petitioner's claim. As the court pointed out, the jury was provided numerous instructions regarding witness credibility and was amply guided with respect to whether Anthony's testimony regarding petitioner's statement should be accorded credit. Additionally, the store surveillance video of the entire altercation was shown to the jury and provided compelling evidence of guilt. In light of these factors, the state court reasonably concluded that there was not a reasonable probability that but for counsel's failure to request CALJIC No. 2.71, the result of the proceedings would have been different.

Claim I lacks merit and is denied.

**B.   Claim II**

Petitioner alleges that the trial court's issuance of CALCRIM 3472 violated his right to due process. CALCRIM 3472 provided that "a person does not have the right to self-defense if she or he provokes a fight or quarrel with the intent to create an excuse to use force." *Id.* at *10. Petitioner argues that CALCRIM 3472 advised the jury to disregard his claim of self defense if it was determined that he had initiated a quarrel. He contends that this instruction provided an incorrect statement of the law because it conflicted with *People v. Hecker*, 109 Cal. 451, 462 (1895), which holds that "[s]elf-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a *deadly* issue and thus, through his fraud, contrivance, or fault, to create a real or

apparent necessity for killing." (Emphasis added.) Finally, petitioner contends that CALCRIM 3472 conflicted with CALCRIM 3471, which provided that "a person who engages in mutual combat or who is the first one to use physical force has a right to self-defense only if, one, he actually and in good faith tries to stop fighting; two, he indicates by word or by conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting; and three, he gives his opponent a chance to stop fighting." *Flores*, 2009 WL 4760801 at *10. Petitioner asserts that since there is no way of knowing which of these instructions the jury followed, error must be found.

The state court rejected petitioner's claim on appeal, finding as follows:

> We disagree with defendant's premise. The *Hecker* court stated that a defendant does not have the right to claim self-defense when he or she contrives a necessity for using deadly force. Likewise, an initial aggressor has no right to claim self-defense when he or she contrives a necessity for using force by provoking a fight. As our Supreme Court more recently stated: "It is well established that the ordinary doctrine - applicable when a defendant reasonably believes that his safety is endangered - may not be invoked by a defendant who , through his own wrongful conduct (e.g. the initiation of a physical assault of the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn.1, 30 Cal.Rptr.2d 33, 872 P.2d 574.) Thus, CALCRIM No. 3472 correctly informed the jury that defendant did not have the did not have the right to invoke the defense of self-defense if he provoked a fight with Carrillo with the intent to create an excuse to use any force, whether it be deadly or non-deadly force.
>
> As CALCRIM No. 3472 as given by the courts is a correct statement of the law, defendant does not contest the correctness of either CALCRIM No. 3471 or CALCRIM 3474, and these three instructions together with CALCRIM No. 505 adequately instructed the jury on defendant's theory of self-defense, we find no instructional error.

*Flores*, 2009 WL 4760801 at *11.

In order to challenge a jury instruction on habeas, a petitioner must prove that the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Spivey v. Rocha*, 194 F.3d 971, 976 (9th Cir. 1999), citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole." *Id*. The relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).

Here, petitioner has failed to demonstrate a reasonable likelihood that the jury applied the challenged instructions in an unconstitutional manner. As the state court pointed out, CALCRIM 3472 did not provide an incorrect statement of the law – it informed the jury that petitioner did not have the right to invoke self-defense if he provoked an altercation with the intent to create an excuse to use force, whether it was deadly force or not. *Flores*, 2009 WL 4760801 at *11. As such, this instruction was not invalidated by *Hecker*. Furthermore, petitioner fails to demonstrate that CALCRIM 3472 conflicts with CALCRIM 3471.

The state court reasonably denied petitioner's claim. Claim II lacks merit and is denied.

## C. Claim III

Petitioner alleges that he was deprived of due process and his right to call witnesses when the trial court excluded evidence of Carrillo's prior felony conviction for possession of a loaded firearm with a gang enhancement, as well as the expert testimony of Dr. Thomas Reidy, who was to testify on the issue of the effects of methamphetamine on Carrillo's conduct. Petitioner had sought to introduce this evidence through motions in limine, which the trial court denied on grounds of irrelevance. Petitioner contends that this evidence was, in fact, relevant as it would have shown that Carrillo had a propensity to act violently, and that he reasonably acted in self-defense.

On appeal, the state court denied petitioner's claim, finding that:

> Evidence of Carrillo's prior conviction for possession of a loaded firearm with a gang enhancement does not, by itself, describe a character trait. It establishes the fact of gang membership while possessing a loaded firearm, and, as the court in *People v. Perez* (1981) 114 Cal.App.3d 470, 477, 170 Cal.Rptr. 619, stated, "Membership in an organization does not lead reasonably to any inference as to the conduct of a member on a given occasion." (Accord, *In re Wing Y.* (1977) 67 Cal.App.3d 69, 79, 136 Cal.Rptr. 390.) The trial court made this point in its ruling on the motion for new trial when it found that the evidence would not tend to show that Carrillo had ever used a gun in an aggressive or violent way. Also, defendant offered no evidence that he knew Carrillo, or of him, prior to the shooting incident, so that he was aware of any reputation Carrillo may have had for possessing a loaded firearm. Accordingly, the court did not abuse its discretion in excluding evidence of Carrillo's prior conviction.
>
> "Expert opinion testimony must be '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact....' (Evid.Code, § 801, subd. (a).)" ( *Smith*, supra, 30 Cal.4th at p. 627, 134 Cal.Rptr.2d 1, 68 P.3d 302.) Defendant cites *People v. Bui* (2001) 86 Cal.App.4th 1187, 1194-1197, 103 Cal.Rptr.2d 908, a case finding that the court did not abuse its discretion in admitting an expert's testimony on the effects of methamphetamine on behavior, in support of his contention that the trial court here erred in excluding such

> evidence. However, "the fact that evidence is admitted in one trial does not mean it must be admitted in another.... The circumstances in which evidence is offered and its exact nature, and the exercise of the trial court's discretion, can vary from case to case." (*Smith*, supra, 30 Cal.4th at p. 627, 134 Cal.Rptr.2d 1, 68 P.3d 302.) In *Bui*, the defendant was convicted of vehicular manslaughter while driving under the influence of a drug (§ 192, subd. (c)(3)), and the expert had testified as to whether a person's ability to drive a motor vehicle would be impaired by the amount of methamphetamine found in the defendant's blood as well as other symptoms the defendant exhibited after the accident. (*Bui*, supra, 86 Cal.App.4th at p. 1187, 103 Cal.Rptr.2d 908.) In this case, Dr. Hain testified that he could not tell how Carrillo "necessarily behaved" due to his methamphetamine use. Other than the amount of methamphetamine found in Carrillo's blood at the time of his death, the only testimony about Carrillo's symptoms of methamphetamine use was defendant's testimony that there was something "weird" about Carrillo's eyes. The store surveillance videos showed Carrillo's actual behavior during the incident. Thus, Dr. Reidy's opinion would not have assisted the trier of fact (Evid.Code, § 801, subd. (a)), and the court did not abuse its discretion in excluding his proffered testimony.

*Flores*, 2009 WL 4760801 at *13-14.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotations and citations omitted); *see also Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense. *See Holmes*, 547 U.S. at 324. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 325-26; *see Egelhoff*, 518 U.S. at 42.

Here, the state court reasonably upheld the trial court's exclusion of evidence of Carrillo's prior conviction for possession of a loaded firearm, as well as Dr. Reidy's testimony. As noted by the state court, evidence of Carrillo's conviction would not have established that the firearm was ever used in a violent way. Furthermore, at the time that the crime was committed, petitioner was not

aware of Carrillo's prior conviction.

The exclusion of Dr. Reidy's testimony was also warranted. At trial, Dr. John Hain, who performed the autopsy on Carrillo, testified on cross-examination that Carrillo had a large amount of methamphetamine in his system at time of death, but could not tell whether Carrillo's behavior was a function of who he normally was or was the result of the influence of methamphetamine. *Flores*, 2009 WL 4760801 at *12. The issues that Dr. Reidy would have testified to therefore were addressed at trial. Additionally, a video showed Carrillo's actual behavior. The exclusion of Dr. Reidy's testimony was not prejudicial.

In sum, the exclusion of the above evidence did not render the trial so fundamentally unfair so as to violate petitioner's right to due process. The state court reasonably denied petitioner's claim. Accordingly, claim III is denied.

## D. Claim IV

Petitioner alleges that his constitutional rights were violated when the trial court misadvised the jury regarding the provocation element of voluntary manslaughter, erroneously instructing the jury with CALCRIM No. 570 as follows:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion . . . It is not enough that the defendant simply was provoked. [¶] The defendant is not allowed to set up his own standard of con[duct]. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked *and how such a person would react in the same situation, knowing the same facts.*

*Flores*, 2009 WL 4760801 at *14. CALCRIM 570, which has since been amended, was relevant to the defense theory that petitioner was acting under the heat of passion which arose when Carrillo glared at petitioner without cause, confronted his companion, Happy, called petitioner a "bitch" and then pursued him outside. Petitioner alleges that the judge's instruction directed the jury to consider whether a reasonable person "would react" in the same manner as petitioner, whereas the only inquiry committed to the jury's consideration should have been whether Carrillo's conduct reasonably caused petitioner to be provoked. Pet'n, App. A at 50-51.

On appeal, the state court denied petitioner's claim, finding that there was less evidence of

1  provocation than there was in *People v. Najera*, 138 Cal. App. 4th 212 (2006), in which the court
2  found insufficient evidence of provocation where Najera's victim owed him money, called him a
3  "faggot," and pushed him. The state court concluded as follows:

> Based on *Najera*, we find that no rational juror could have concluded that the name-calling in this case would cause an ordinary person to become so inflamed that he lost reason and judgment and would have reacted from passion rather than from judgment. Consequently, voluntary manslaughter instructions were not merited, and any instructional error regarding CALCRIM No. 570 could not have prejudiced defendant. Even if we were to find that voluntary manslaughter instructions were merited in this case, after reviewing the entire record, we find that it is not reasonably probable the jury would have reached a more favorable result had the current version of CALCRIM 570 been given. (*People v. Watson*, (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)

*Flores*, 2009 WL 4760801 at *16.

As noted above, in order to challenge a jury instruction on habeas, a petitioner must prove that the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Spivey*, 194 F.3d at 976. The relevant inquiry is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that prevents the consideration of constitutionally relevant evidence." *Boyde*, 494 U.S. at 380. Here, petitioner has failed to demonstrate a reasonable likelihood that the jury applied the challenged instructions in an unconstitutional manner.

The state court reasonably denied petitioner's claim. Claim IV is denied.

### E. Claim V

Petitioner alleges that he was deprived of due process due to the trial court's failure to impose a reasonable limitation on the nature and volume of gang evidence admitted at trial. The prosecution proffered gang evidence in order to prove a gang enhancement by showing a pattern of criminal gang activity. Petitioner filed motions in limine seeking to exclude this evidence. Specifically, he challenged evidence that he was present on March 7, 1999, when a fellow gang member shot a rival gang member, and that he was present on March 1, 1998, and November 6, 1998, when guns and/or ammunition were found in the car in which he was a passenger. The trial court denied his motions, and the prosecution proceeded to present testimony regarding eight gang offenses. Petitioner contends that the use of "eight predicate offenses was cumulative overkill." Pet'n, App. A at 61.

The state court rejected petitioner's claim, finding as follows:

> The testimony about the three predicate offenses at issue here was not more inflammatory than the testimony about defendant's and his cohorts' conduct during the shooting incident. The trial court was acting well within its broad discretion in overruling any evidentiary objection to the testimony about the three predicate offenses because it was relevant to the gang enhancement allegation and was not unduly prejudicial. (See *People v. Valdez* (1997) 58 Cal.App.4th 494, 511, 68 Cal.Rptr.2d 135.) In addition, although testimony about five other predicate offenses was presented, the testimony regarding the three at issue did not "necessitate undue consumption of time." (Evid.Code, § 352.) The testimony regarding all eight predicate offenses entailed only eight pages of the entire trial transcript. (Compare *People v. Williams*, supra, 170 Cal.App.4th at pp. 610-611, 88 Cal.Rptr.3d 401.) Even without the predicate offenses at issue here, the evidence overwhelmingly established defendant's guilt of the substantive offenses and the truth of the gang enhancement allegations. Therefore, it is not reasonably probable that the jury would have returned verdicts more favorable to defendant had the testimony of any or all three of the predicate offenses at issue been excluded. (*Id.* at p. 613, 88 Cal.Rptr.3d 401; *People v. Leon* (2008) 161 Cal.App.4th 149, 169-170, 73 Cal.Rptr.3d 786.) No violation of defendant's right to a fair trial has been shown.

*Flores*, 2009 WL 4760801 at *16.

As noted above, the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry*, 197 F.3d at 1031; *Colley*, 784 F.2d at 990. The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. Here, petitioner has failed to demonstrate that the admission of gang evidence rendered petitioner's trial fundamentally unfair. The gang evidence was properly admitted to establish the pattern of gang activity necessary to support a gang benefit enhancement. Cal. Penal Code § 186.22(b)(1). As the state court noted, the admission of this evidence was not unduly time-consuming. Moreover, evidence at trial overwhelmingly established petitioner's guilt of the substantive offenses, as well as the gang enhancement allegations. The state court reasonably denied petitioner's claim.

For the above-mentioned reasons, claim V is denied.

### F. Claim VI

Petitioner alleges that his right to due process was violated as a result of the cumulative effect of the errors alleged in his above-mentioned claims. He claims that instructional errors artificially strengthened the prosecution's case and prevented the jury from properly considering defense

theories, and that evidentiary errors negatively impacted the trial. He further alleges that the defense was hampered by its inability to show that Carrillo's prior conviction and methamphetamine use rendered him dangerous, and that he was prejudiced by the improper admission of gang evidence. Petitioner asserts that the cumulative effect of these errors compels a finding of prejudice and a reversal of his judgment.

On appeal, the state court rejected this claim as follows:

> Defendant contends that the judgment must be reversed due to the cumulative effect of the above alleged errors. "Absent the numerous errors which had significant influence on the jury, it is likely that a murder conviction would not have been returned." Our Supreme Court has recognized that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844, 72 Cal.Rptr.2d 656, 952 P.2d 673.) As we discussed above, we find that any instructional error was harmless, and that the court did not abuse its discretion regarding the admission or exclusion of any evidence. Accordingly, we find no cumulative error requiring reversal.

*Flores*, 2009 WL 4760801 at *18.

The combined effect of multiple trial errors violates due process if it renders a criminal trial fundamentally unfair. *Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution.) Where no single constitutional error existed at trial however, there can be no cumulative error. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Here, as discussed above, petitioner has failed to demonstrate any constitutional errors at trial. Petitioner's claim lacks merit.

The state court reasonably rejected petitioner's claim. Claim VI is denied.

### G. Claim VII

Petitioner alleges that the one-year sentence enhancement imposed following his admission of a prior felony conviction must be stricken because although the court informed him of his right to a jury trial on the prior conviction, it failed to advise him of his right to remain silent and confront witnesses. He asserts that under *People v. Mosby*, 33 Cal. 4th 353, 359 (2004), his constitutional rights against self-incrimination, to confrontation and a jury trial must be specifically outlined and waived prior to the acceptance of a guilty plea. Pet'n, App. A at 67.

On appeal, the state court rejected petitioner's claim as follows:

> [T]he record in this case shows that defendant was aware of his constitutional rights to confront witnesses and not to incriminate himself. Prior to this case, defendant had served a two-year prison term beginning in 1999, and he had been returned to prison four separate times for violating his parole, although the record does not indicate whether defendant's prior convictions and parole revocations were after trial or by plea. In this case, defendant admitted the prior allegations when he was dressed out for trial and after hearing that Anthony and Ricardo were present and ready to testify. Defense counsel informed the prosecutor and the court that defendant intended to testify, and the court stated that the prior conviction that defendant had that had resulted in the prison sentence was a crime of moral turpitude that could be used to impeach defendant if he chose to testify. The court asked defense counsel whether he had discussed with defendant his willingness to admit the prior in advance of selecting the jury and counsel stated he had. The court then advised defendant as outlined above, and later, during defendant's trial testimony, defendant admitted that he was convicted of the offense that underlies his prison prior. Thus, the record demonstrates that, under the totality of the circumstances, defendant admitted the prior while knowing of and intending to waive his rights to a jury trial, to confront witnesses, and to remain silent. (*Mosby*, supra, 33 Cal.4th at p. 365.) Accordingly, the admission was intelligent and voluntary (*ibid.*), and we need not strike the prior enhancement.

*Flores*, 2009 WL 4760801 at *19.

Petitioner fails to demonstrate that he has an established right under clearly established Supreme Court precedent to be informed of the consequences of admitting a prior conviction. Although the Ninth Circuit has held that an admission by a defendant of prior felony convictions, which are to be used to enhance his sentence on another offense, is the functional equivalent of a plea of guilty to a separate charge, *see Wright v. Craven*, 461 F.2d 1109 (1972), it is doubtful that *Wright* is good law. *See United States v. Reed*, 575 F.3d 900, 928 (9th Cir. 2009).

For the above-mentioned reason, claim VII is denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

Furthermore, a certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

**IT IS SO ORDERED.**

DATED: January 4, 2012

_____
CHARLES R. BREYER
United States District Judge